# DEFENDANT'S

# EXHIBIT

# 1

# In the United States Court of Federal Claims

No. 06-944L
(Filed: December 19, 2007)

* * * * * * * * * * * * * * * * * * * * * *

THE TOHONO O'ODHAM NATION,

*Plaintiff*,

v.

THE UNITED STATES,

*Defendant.*

* * * * * * * * * * * * * * * * * * * * * *

28 U.S.C. § 1500; Motion to Dismiss; Lack of Jurisdiction; Breach of Trust; Trust Accounting; Accounting in Aid of Judgment; Money Damages; Equitable Remedies for Breach of Trust

*Keith Harper*, Washington, DC, with whom was *G. William Austin*, for plaintiff.

*Kevin J. Larsen,* United States Department of Justice, Environmental and Natural Resources Division, Washington, DC, with whom was *Matthew J. McKeown*, Acting Assistant Attorney General, for defendant. *John H. Martin* and *Anthony P. Hoang*, Department of Justice, *Thomas Bartman*, Department of the Interior, and *Rachel Howard*, Department of the Treasury, of counsel.

## OPINION

BRUGGINK, *Judge*.

This is one of numerous actions pending in this court and the federal district courts brought by Indian tribes against the United States for breach of trust. Plaintiff, the Tohono O'odham Nation ("Nation" or "plaintiff"), a federally recognized Indian tribe, alleges that the United States, acting by and through the Secretary of the Interior, the Special Trustee for American Indians, and the Secretary of the Treasury, breached its fiduciary duties as trustee of various funds and property owned by the Nation. Accordingly, plaintiff, as beneficiary, seeks damages for losses resulting from defendant's alleged

mismanagement of the trust funds and property. The day before filing this action, plaintiff filed a suit in district court against the United States similarly seeking to redress breaches of trust with respect to the accounting and management of the same trust assets. Pending now is defendant's motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of jurisdiction because of the operation of 28 U.S.C. § 1500 (2000) ("section 1500"), a statutory provision that divests this court of jurisdiction to hear claims that are already pending in another court. The matter is fully briefed. Oral argument was heard on October 3, 2007. For the reasons discussed below, we grant defendant's motion to dismiss.

## BACKGROUND[1]

The United States has long maintained a unique relationship with various Native American tribes, acting as trustee of tribal lands and funds for the benefit of the individual tribes. Such is the case with the lands and funds of the Tohono O'odham Nation, a tribe of approximately 26,000 members located in southern Arizona. Between 1874 and 1955, a series of executive orders and Acts of Congress established various areas of non-contiguous land as the Nation's tribal reservations. Collectively, the land is the second largest Indian reservation in the United States, consisting of nearly three million acres. The United States manages both the Nation's tribal land and any income derived therefrom. Sources of income include the sale of valuable natural resources, such as copper, sand and gravel, and the conveyance of partial interests in tribal land to third parties, such as leases, easements, and rights-of-way. In addition, the United States holds in trust money awarded from legal judgments ("judgment fund") against the federal government on various claims brought by the Nation before the Indian Claims Commission. The judgment fund includes an award of $26 million to the Nation in 1976 as settlement for a takings and trespass claim against the United States.

On December 28, 2006, the Nation filed suit in the United States District Court for the District of Columbia, setting forth a variety of allegations of breach of fiduciary duties with respect to the United States' management and administration of the Nation's trust assets. The Nation's principal

[1]The facts are drawn from the two complaints, and, for purposes of this motion, are assumed to be correct.

complaint is that the United States, as trustee, has "grossly mismanaged and continue[s] to grossly mismanage the trust and [has] failed for over a century to carry out the most basic and fundamental trust duties owed to the Nation." District Compl. ¶ 4. The district court complaint describes various examples of mismanagement, including the United States' failure to provide an adequate accounting of trust assets; failure to maintain an adequate accounting system and adequate trust records; failure to ensure that the trust assets are managed so as to yield a maximum return to the Nation; failure to collect, invest, and disburse trust funds; and improper conversion of trust funds for use by the United States.

As a result of the alleged mismanagement of the trust assets, the Nation argues that it is unable to determine the "true state of its trust assets." *Id.* ¶ 21. Specifically, the Nation is unable to determine the accurate account balances of trust funds, how much money should have been credited to the funds or paid directly to the Nation, how much of the trust property has been converted to the use of the United States, and whether the United States obtained fair market value for the various leases and sales of trust assets. The Nation believes such instances of mismanagement constitute breaches of the United States' fiduciary duties as trustee of the Nation's assets.

The Nation characterizes its district court complaint as "an action to compel federal officials to perform a duty owed to the Nation." *Id.* ¶ 9. The Nation asks the district court for a decree delineating the fiduciary duties owed to the Nation; a decree that the United States has breached those duties; a decree directing the United States to provide a complete, accurate, and adequate accounting of all of the trust assets and to comply with its fiduciary duties; a decree "providing for the restatement of the Nation's trust fund account balances in conformity with this accounting;" and "any additional equitable relief that may be appropriate (e.g. disgorgement, equitable restitution, or an injunction . . .)." [2] *Id.* Prayer for Relief ¶ 6.

---

[2] The Nation also requests a declaration with respect to an accounting report prepared by Arthur Andersen LLP, an accounting firm contracted by the United States in the 1990s to reconcile the Nation's trust accounts. The Nation requests that the district court declare that the Andersen report is not a "complete, accurate, and adequate accounting" of the trust accounts. District Compl. Prayer for Relief ¶ 3.

On December 29, 2006, the Nation filed suit in this court. In the complaint, the Nation similarly maintains that, for over a century, the United States has owed, and continues to owe, fiduciary duties and responsibilities to the Nation as trust beneficiary. These duties include, *inter alia*, the proper management and administration of the trust; maintaining accurate accounts and adequate records; performing a complete, accurate, and adequate accounting of all trust property for the Nation; maximizing the productivity of the trust assets through reasonably skillful investments; and generally exercising the highest responsibility, care, and skill in the administration of the trust.

The Nation alleges that the United States has "consistently and egregiously failed to comply with these and other fiduciary duties incumbent on a trustee and imposed on the United States." CFC Compl. ¶ 23. The alleged instances of breach include the United States' failure to administer the trust in the interest and for the benefit of the Nation, failure to keep and maintain accurate accounts with respect to the trust assets, failure to preserve the trust assets from loss, failure to collect and deposit trust funds, failure to invest trust assets so as to maximize returns, and failure to refrain from self-dealing with trust assets.

The Nation explains that its action in this court is "for money damages . . . brought to redress gross breaches of trust by the United States . . . as trustee[] of land, mineral resources and other assets." *Id.* ¶ 1. Alleged damages include losses resulting from the United States' failure to obtain fair market value or otherwise compensate the Nation with respect to the removal of natural resources from tribal lands by third parties or the use of tribal lands by third parties in the form of easements, permits, or rights-of-way. The Nation also alleges that it suffered losses from the United States' mismanagement of tribal funds, including the loss of potential investment returns. Accordingly, the Nation requests that the court determine that the United States is liable for the injuries and losses caused by the breaches of fiduciary duty and for a determination of the amount of damages due.

The complaints closely resemble one another. The following table is a side by side comparison of portions of the allegations presented in each complaint:

| District Court | Court of Federal Claims |
| --- | --- |
| <u>Nature of Action</u>:<br><br>"to seek redress of breaches of trust by the United States . . . in the management and accounting of trust assets, including funds and lands . . . and to compel the defendants to provide a full and complete accounting of all trust assets . . . and to correct the balances of the [] trust fund accounts to reflect accurate balances." District Compl. ¶ 1. | <u>Nature of Action</u>:<br><br>"for money damages against the United States, brought to redress gross breaches of trust by the United States . . . as trustees . . . of land, mineral resources and other assets . . . ." CFC Compl. ¶ 1.<br><br>"[T]his case arises out of Defendant's continuing material breaches of statutory, regulatory, and fiduciary duties owed to the Nation and the Nation seeks damages for Defendant's mismanagement . . . ." *Id.* |
| <u>Funds/Assets</u>:<br><br>"Involved in this action are funds and other assets, including approximately 2,900,000 acres of land . . . ." *Id.* ¶ 2.<br><br>"These lands comprise a reservation located in the southern most part of the State of Arizona . . . ." *Id.* ¶ 3. | <u>Funds/Assets:</u><br><br>The Papago Reservation ("Sells Reservation"): "consists of approximately 2,800,000 acres of land." *Id.* ¶ 10.<br><br>The San Lucy District ("Gila Bend Indian Reservation"): "consists of approximately 3,800 acres of land." *Id.* ¶ 11.<br><br>The San Xavier District: "consists of approximately 69,189 acres of land." *Id.* ¶ 12. |

| | |
|---|---|
| [T]hese lands have produced, *inter alia*, copper, other minerals, sand, and gravel, and such trust lands have been leased to third parties and to the government for rights-of-way, business uses, and other purposes." *Id*. ¶ 3. | "[T]he mineral rights on the Nation Reservation are managed by the Defendant as trustee . . . ." *Id*. ¶ 14.<br><br>"A substantial portion of the funds held by the United States in trust . . . is derived from income from tribal lands." *Id*. ¶ 15<br><br>"Income is derived from, *inter alia*, the sale of the natural resources and the conveyance of certain interests in the . . . land, including leases, easement, and rights of ways." *Id*. ¶ 16. |
| "[T]he trust funds are comprised of both judgment funds . . . and funds that receive their trust character as proceeds of trust property, specifically the lease and sale of resources or lands . . . ." *Id*. ¶ 2. | "Additional assets held in trust by the United States . . . are derived from a judgment on various claims brought by the Nation against the United States. . . . [T]he Indian Claims Commission approved a settlement award of $26 million ($26,000,000) on behalf of the Nation . . . ." *Id*. ¶ 17. |

| | |
|---|---|
| <u>Trust Obligations:</u> | <u>Trust Obligations:</u> |
| "The United States unquestionably owes substantial fiduciary obligations to the Nation with respect to the management and administration of the Nation's trust funds and other assets." *Id.* ¶ 12.<br><br>"Because the United States holds the Nation's tribal lands and other assets in trust, it has assumed the fiduciary obligations of a trustee." *Id.* ¶ 15. | "Because the United States engages in pervasive management and control of the Nation's tribal assets pursuant to federal statutes and regulations, . . . the government has assumed the fiduciary obligations of a trustee." *Id.* ¶ 18 |
| "The longstanding trust relationship between the United States and the Nation and the United States' resulting fiduciary duties are rooted in and derived from numerous statutes and regulations." *Id.* ¶ 16 (followed by a list of statutory and regulatory provisions). | "The century-long trust relationship between the United States and the Nation, and the resultant fiduciary responsibilities incumbent on the United States, are rooted in and derived from a number of statutes, regulations and executive orders." *Id.* ¶ 19 (followed by a list of statutory and regulatory provisions). |
| "The statutes, regulations, and executive orders giving rise to the United States' fiduciary duties provide the 'general contours' of those duties, but the more specific details are filled in through reference to general trust law and 'defined in traditional equitable terms.'" *Id.* ¶ 18. | "The statutes, regulations, and executive orders giving rise to the United States' fiduciary duties provide the 'general contours' of those duties, but the details are filled in through reference to general trust law." *Id.* ¶ 21. |

| | |
|---|---|
| "These duties include . . . the duty to:<br><br>(a) a complete, accurate, and adequate historical accounting of all the trust property, with such accounting containing sufficient information to enable the Nation to readily ascertain whether the trust has been faithfully carried out;<br><br>(b) Maintain adequate books and records with respect to the trust property . . . ; | "These duties include . . . the duty to:<br><br>"c. Keep and render clear and accurate accounts with respect to the administration of the trust, by maintaining adequate books and records with respect to the trust property . . . ;<br><br>d. Furnish . . . a complete, accurate, and adequate historical accounting of all the trust property, with such accounting containing sufficient information to enable the Nation to readily ascertain whether the trust has been and is being faithfully carried out; |

| | |
|---|---|
| (c) Refrain from self dealing or otherwise benefitting from management of the trust property;<br><br>(d) . . . [P]reserve and protect trust property;<br><br>(e) [E]nforce claims held by the trust;<br><br>(f) Use reasonable skill and care to invest and deposit trust funds in such a way as to maximize the productivity of trust property . . . ; and<br><br>(g) . . . [E]nsure that trust property is used for its highest and best use." *Id*. ¶19. | e. Exercise the 'highest responsibility,' care and skill in the administration of the trust;<br><br>f. Preserve the trust assets . . . ;<br>. . . .<br><br>g. Keep the trust assets of the Nation separate from [non-trust property];<br><br>h. Properly collect and deposit the trust funds of the Nation;<br><br>i. . . . [U]sing reasonable skill and care to invest and deposit trust funds in such a way as to maximize the productivity of trust property . . . ; and<br><br>j. Refrain from self-dealing . . . ." *Id*. ¶ 22. |

| | |
|---|---|
| Breaches of Trust:<br><br>"The United States . . . has consistently and egregiously failed to comply with these and other fiduciary obligations and continues to do so." *Id*. ¶ 20.<br><br>"Its breaches of trust include . . . :<br><br>(a) Failure to provide and unconscionably delaying the performance of a complete, accurate, and adequate accounting of trust property;<br><br>(b) Failure to maintain adequate books and records . . . ;<br><br>(c) Failure to refrain from self-dealing . . . ;<br><br>(d) Failure to . . . preserve and protect trust property;<br><br>(e) Failure to . . . bring and enforce claims held by the trust;<br><br>(f) Failure . . . to invest and deposit trust funds . . . to maximize the productivity of trust property . . . ;<br><br>(g) Failure to ensure that trust assets are used for their highest and best use." *Id*. | Breaches of Trust:<br><br>"The United States has consistently and egregiously failed to comply with these and other fiduciary duties incumbent on a trustee . . . ." *Id*. ¶ 23<br><br>"These breaches of trust include . . . :<br><br>a. Failure to properly administer the trust for the benefit of the Nation;<br>. . . .<br><br>c. Failure to keep and render clear and accurate accounts . . . ;<br><br>d. Failure to furnish complete and accurate information . . . ;<br><br>e. Failure to exercise the 'highest responsibility,' care, and skill in the administration of the trust;<br><br>f. Failure to preserve the trust assets . . . ;<br><br>g. Failure to keep trust assets of the Nation separate from [non-trust property];<br><br>h. Failure to properly collect and deposit the trust funds of the Nation;<br><br>i. Failure to make the assets of the trust productive . . . ; |

| | |
|---|---|
| | j. Failure to invest and deposit trust funds in such a way as to maximize the productivity of trust property . . . ; and<br><br>k. Failure to refrain from self-dealing . . . ." *Id.* |
| <u>Counts I-II:</u><br><br>"Specifically, the defendants have, *inter alia*, failed to provide the Nation with a complete, accurate, and adequate accounting of the Nation's trust assets . . . ." *Id.* ¶ 36.<br><br>"The Nation is entitled to a further declaration that the defendants have breached the fiduciary duties they owe to the Nation by, *inter alia*, failing to provide the Nation with a complete, accurate, and adequate accounting . . . ." *Id.* ¶ 38. | <u>Counts I-III:</u><br><br>"The United States, as trustee, has never provided the Nation a complete and accurate accounting of the revenue the United States collected or was required to collect under mineral leases and permits." *Id.* ¶ 28.<br><br>"Defendant breached its fiduciary duty by failing to lease such property interest for fair market value and failing to collect fair and reasonable compensation for the benefit of the Nation." *Id.* ¶ 29.<br><br>"The Nation is entitled to a money damage award against the United States from its mismanagement of the Nation's mineral resources in an amount to be proven at trial." *Id.* ¶ 30. |

Case 1:06-cv-00924-PLF    Document 176    Filed 11/19/2008    Page 12 of 27

| | |
|---|---|
| "The Nation is entitled to a further declaration (1) delineating the defendants' fiduciary duties to, among other things, enable proper discharge of their accounting obligation and (2) finding that the defendants have breached their duties so declared." *Id*. ¶ 39.<br><br>"The Nation is entitled to injunctive relief directing the defendants to provide a complete, accurate, and adequate accounting of the Nation's trust assets . . . and to comply with all other fiduciary duties as determined by this Court." *Id*. ¶ 42.<br><br>"The Nation is further entitled to make exceptions and objections to the accounting provided, to a restatement of their trust fund account balances in conformity with the ultimate and complete accounting, and to any additional equitable relief that may be appropriate (e.g., disgorgement, equitable restitution, or an injunction . . . )." *Id*. ¶ 43. | "The nation is entitled to a money damage award against the United States from its mismanagement of the Nation's mineral resources in an amount to be proven at trial." *Id*. ¶ 30.<br><br>"The United States, as trustee, has never provided the Nation a complete and accurate accounting of the revenue the United States collected or was required to collect, in granting easements and rights of way and leasing tribal properties." *Id*. ¶ 33.<br><br>"Defendant breached its fiduciary duty to lease such property interests . . . for fair market value, and to collect fair and reasonable compensation for the benefit of the Nation." *Id*. ¶ 34.<br><br>"The Nation is entitled to a money damage award against the United States arising from its mismanagement of the non-mineral interests in the Nation's trust land . . . ." *Id*. ¶ 35.<br><br>"At no time has the United States provided the Nation a complete and accurate accounting of judgment funds held in trust for its benefit." *Id*. ¶ 38. |

| | |
|---|---|
| "The Nation is entitled to further injunctive relief directing the defendants to bring themselves into conformity with their fiduciary obligations and otherwise address breaches of trust found by the Court." *Id*. ¶ 44. | "[T]he United States has failed to invest, and continues to fail to invest, the principal and earnings of judgment funds held in trust, in a timely manner." *Id*. ¶ 39.<br><br>"[T]he United States has failed to invest trust funds to obtain the maximum investment returns possible . . . ." *Id*. |
| <u>Prayer for Relief:</u><br><br>"For a decree construing the trust obligations of the defendants to the Nation, including but not limited to, the duty to provide a complete, accurate, and adequate accounting . . . ." *Id*. Prayer for Relief ¶ 1.<br><br>"For a decree that the United States . . . has been in breach of its trust obligations . . . , specifically including, *inter alia*, its fiduciary duty to provide a complete, accurate, and adequate accounting of all trust assets . . . ." *Id*. Prayer for Relief ¶ 2.<br><br>"For a decree delineating the fiduciary duties owed by the defendants to the Nation with respect to the management and administration of the trust assets belonging to the Nation." *Id*. Prayer for Relief ¶ 4. | <u>Prayer for Relief:</u><br><br>"For a determination that the Defendant is liable to the Nation in damages for the injuries and losses caused as a result of Defendant's breaches of fiduciary duty." *Id*. Prayer for Relief ¶ 1. |

| | |
|---|---|
| "For a decree providing for the restatement of the Nation's trust fund account balances in conformity with this accounting, as well as any additional equitable relief that may be appropriate (e.g., disgorgement, equitable restitution, or an injunction directing the trustee to take action against third parties). *Id*. Prayer for Relief ¶ 6. | "For a determination of the amount of damages due the Nation plus interest . . . ." *Id*. Prayer for Relief ¶ 2.<br><br>"For such other and further relief as the Court deems just and appropriate." *Id*. Prayer for Relief ¶ 4. |

The two complaints clearly involve the same parties, the same trust corpus, the same asserted trust obligations, and the same asserted breaches of trust over the same period of time. The only apparent difference in the complaints is the focus in the district court on the equitable remedy of a trust accounting and, in this court, on money damages. We use the term "focus" advisedly. Despite its apparent emphasis on an accounting, the district court complaint specifically seeks money (disgorgement, restatement of accounts, and restitution). The complaint here, although focusing on money damages, alleges a breach through failure to provide an adequate trust accounting and it seeks relief which, as explained below, will require an accounting in aid of judgment. Whether the differences in focus are sufficient, under section 1500 jurisprudence, to prevent the overwhelming similarities from triggering the jurisdictional bar is discussed below.

## DISCUSSION

*The Jurisdiction of the Two Courts*

This court has jurisdiction under the Indian Tucker Act, 28 U.S.C. § 1505 (2000), to allow Native American tribes the right to bring suit in the Court of Claims like any other plaintiff. *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) ("the Indian Tucker Act, confers a like waiver for Indian tribal claims that 'otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe'"). This is only a jurisdictional grant to the court, however. Like the general Tucker Act, 28 U.S.C. § 1491 (2000), it is not the substance of the cause of action; that

must be found elsewhere in law.[3] In Indian trust accounting cases, absent a special jurisdictional statute, a common device in the past century, the substantive right must be found in statutes from which a trust relationship can be inferred, and one which can reasonably be construed to imply a money remedy for breach. *See United States v. Mitchell*, 463 U.S. 206 (1983).

Under none of its broader jurisdictional grants does this court have general equitable powers. This means, as plaintiff correctly points out, that the court cannot simply order an accounting as stand-alone relief. Instead, "the court has the power to require an accounting in aid of its jurisdiction to render a money judgment on that claim." *Klamath & Modoc Tribes v. United States*, 174 Ct. Cl. 483, 490-91 (1966); *see also The American Indians Residing on Maricopa-Ak Chin Reservation v. United States*, 229 Ct. Cl. 167, 169 (1981). It is presumably this power which plaintiff invokes in its complaint here, when, for example, it recites that,

> the United States, as trustee, has never provided the Nation a complete and accurate accounting of the revenue the United States collected . . . under mineral leases and permits. . . . Defendant breached its fiduciary duty by failing to lease such property interest for fair market value . . . . The Nation is entitled to a money damage award against the United States arising from its mismanagement of the Nation's mineral resources in an amount to be proven at trial.

CFC Compl. ¶¶ 28-30.

Assuming that the plaintiff persuades this court that the statutory framework gives rise to a trust, the breach of which is remediable by the payment of money, the court then will have to hear detailed evidence from both sides about how the United States performed as trustee. The United States, as trustee, would have to meet plaintiff's prima facie case of breach with a full accounting for its conduct. In short, assuming this action were to proceed in this court, and plaintiff satisfied its burdens of proof, what would ensue would amount to an accounting, albeit in aid of judgment.

---

[3]"It is enough, then, that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages." *White Mountain Apache*, 537 U.S. at 473.

As to the district courts, Congress enacted a statute in 1966 giving them jurisdiction to hear suits brought by tribes arising under the Constitution, laws or treaties of the United States. *See* 28 U.S.C. § 1362 (2000) ("section 1362"). Native American tribes thus may bring suit in district court like any other plaintiff. *See Sac & Fox Nation of Okla. v. Cuomo*, 193 F.3d 1162, 1165 n.3 (10th Cir. 1999) ("[28 U.S.C. § 1362] affords jurisdiction of suits by Indian Tribes that involve federal questions"). Like the Tucker Act and the Indian Tucker Act, section 1362 has been treated as waiving sovereign immunity but not creating a cause of action. The cause of action must come from some other provision in law that is within the jurisdiction of the district court. In this case, plaintiff cites 28 U.S.C. § 1331 ("section 1331") (federal question jurisdiction) and 5 U.S.C. § 706 (actions under the Administrative Procedures Act).

Judicial review under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 500 *et seq.* (2000), is available "when there is no other adequate remedy in a court." *Id*. § 704. Jurisdiction is unavailable, however, under the APA when the action seeks "money damages." *See id*. § 702. Presumably, this is what prompts plaintiff to urge us to ignore as "non-operative" those portions of the district court complaint that appear to seek money. It is unclear, however, whether plaintiff genuinely does not seek any monetary relief from the district court, or if plaintiff wants monetary relief but views it as different than what is available here and thus not problematic under the APA. During oral argument, the court asked plaintiff's counsel if plaintiff would be willing to disavow monetary relief in the district court. Counsel declined to do so:

> [T]he government says that equitable remedies, like disgorgement and restitution, are monetary relief. We think that's dead wrong, but if that's what they mean by "monetary relief," then I can't agree that we're not seeking those equitable – what we view as equitable and they view as monetary – then I certainly can't agree that we're not seeking that in District Court. We are entitled to the full panoply of remedies that a court of equity has.

Tr. 37-38, Oct. 3, 2007. This is consistent with the district court prayer for relief, in which plaintiff asks for a decree providing for a restatement of account balances in conformity with the accounting and for "any additional equitable relief that may be appropriate (e.g. disgorgement, equitable restitution, or an injunction . . .)." District Compl. Prayer for Relief ¶ 6. There

is thus nothing "inoperative" about this request, or the allegations of mismanagement and self-dealing that lead up to it.

In any event, for purposes of section 1500, even if the district court does not have jurisdiction over the monetary relief sought, it is the "relief requested," *Keene Corp. v. United States*, 508 U.S. 200, 212 (1993), not the "relief available" that is relevant. *See Frantz Equip. Co. v. United States*, 120 Ct. Cl. 312, 314 (1951) ("The applicability of [section 1500] . . . is not conditioned upon the question of whether the District Court had jurisdiction of the claim asserted by the plaintiff therein"). Indeed, even if the district court action had been dismissed in the interim, the inquiry would still be whether, assuming section 1500 is a bar, the district court proceeding was pending at the time the action in this court was initiated.[4]

*Section 1500*

Section 1500 deprives the court of jurisdiction "of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States . . . ." 28 U.S.C. § 1500. Section 1500 thus protects the United States from being forced to defend against duplicative suits.

The history of section 1500 is nearly as long and storied as that of this court and its predecessor, the United States Court of Claims. Following the Civil War, owners of seized southern cotton brought suit under The Captured and Abandoned Property Act of 1863 for the value of the seized cotton upon a showing that the claimant had not given aide to the Confederacy. *See* Paul F. Kirgis, *Section 1500 and the Jurisdictional Pitfalls of Federal Government Litigation*, 47 Am. U. L. Rev. 301, 303 (1997). Many claimants also brought

---

[4]Even if any misgivings we had about the district court's jurisdiction to grant monetary relief, *see The Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 139 n.10 (2004), were relevant under section 1500, as plaintiff points out, under *Bowen v. Massachusetts*, 487 U.S. 879 (1988), it is not inconceivable that the district court could construe the request for monetary relief as not "money damages" under the APA. While this might persuade the district court to retain jurisdiction, it does not mean that the plaintiff does not seek money. As we discuss below, we view the concerns of section 1500 to be the overlap in the ultimate relief, however characterized in terms of legal theory.

suit in the local district courts against the Treasury officers who had seized the property. *Id*. In response, Congress in 1868 adopted the predecessor to what is now codified as section 1500.[5]

The feature of section 1500 that is controverted here is the question of whether the complaints involve the same "claim." The first reported decision of the modern era dealing with the meaning of the term "claim" in section 1500 was *British American Tobacco v. United States*, 89 Ct. Cl. 438 (1939).[6] The Court of Claims there held that the contract suit was barred when another action in district court sought monetary recovery in tort based on the same set of operative facts. *Id*. at 440. "[T]he word 'claim,' as used in [the statute] has no reference to the legal theory upon which a claimant seeks to enforce his demand if it appears, as it does here, that the defendant in a suit in another court was, in respect of the subject matter or property in respect of which the claim was made . . . ." *Id*. The "operative facts" or "subject matter" of the claim were thus the determinative factor rather than the legal theory asserted.

In *Casman v. United States*, 135 Ct. Cl. 647 (1956), the court held that the plaintiff's claim for back pay was not barred by section 1500 even when a suit based on the identical set of facts for employment reinstatement was pending in district court. *Id*. at 650. The court noted that the purpose of section 1500 was to force plaintiffs to elect between the Court of Claims and another court in which to pursue its whole claim against the government. *Id*. at 649 (citing *Matson Navigation Co. v. United States*, 284 U.S. 352, 355-56 (1932)). The plaintiff's suit in the Court of Claims was not barred because the equitable relief requested in district court was not available in the Court of Claims. *Id*. at 650. The court stated that section 1500 did not require plaintiffs to elect between monetary and equitable relief. *Id*.

In *Johns-Manville Corp. v. United States*, 855 F.2d 1556 (Fed. Cir. 1988), the Federal Circuit upheld the dismissal of plaintiff's suit for contractual indemnification in the United States Claims Court[7] because

---

[5] 15 Stat. 75, 77 (June 25, 1868).

[6] The statute applied in *British American* was a predecessor to section 1500 and was the same in substance as 28 U.S.C. § 1500.

[7] Prior to 1992, this court was known as the United States Claims Court. We refer to the court as it was called at the time of decision cited.

plaintiff had pending a claim based on the identical facts brought under the Federal Tort Claims Act[8] in district court. *Id*. at 1567-68. Both complaints sought recovery of costs and expenses. The Federal Circuit revisited section 1500 in *The Boston Five Cents Sav. Bank, FSB v. United States*, 864 F.2d 137 (1988). There, the Federal Circuit allowed a suit for money damages in the Claims Court while a similar suit seeking declaratory judgment was pending in the district court. *Id*. at 139-40 (citing *Casman*, 135 Cl. Ct. at 649-50). The court held that although the complaints were identical, *Johns-Manville* did not apply because monetary damages were only available in the Claims Court. Id. at 140.

The issue reached the Supreme Court in *Keene Corp. v. United States*.[9] The Court held that "dismissal would turn on whether the plaintiff's other suit was based on substantially the same operative facts as the Court of Claims action, at least if there was some overlap in the relief requested. That the two actions were based on different legal theories did not matter." 508 U.S. at 212 (citing *British American*, 89 Ct. Cl. at 440) (internal citations omitted). Because the issue was not before it, the Court declined to "decide whether two actions based on the same operative facts, but seeking completely different relief, would implicate § 1500." *Id*. at 213 n.6. The Court limited *Casman* to situations in which the relief was completely different in both suits. *Id*. at 214 n.9, 216 (citing *Johns-Manville*, 855 F.2d at 1566-67; *Boston Five Cents*, 864 F.2d at 139).

The Court also addressed the concern that section 1500's anachronistic character prevented some claimants from asserting rights that Congress had

---

[8] Codified at 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), 2671-80 (2000).

[9] In *Keene*, the plaintiff had been sued in district court by various individuals for asbestos related injuries. Plaintiff filed a third-party complaint against the United States seeking indemnification because it used the asbestos pursuant to government specifications. It subsequently filed two complaints in the Court of Claims (eventually transferred here) seeking damages from the cost of litigating and settling the asbestos litigation. The Court held that claims in this court were barred by the application of section 1500. 508 U.S. at 202.

otherwise granted them.[10] The Court dismissed this argument, stating that, "the 'proper theater' for such arguments, as we told another disappointed claimant many years ago, 'is the halls of Congress, for that branch of the government has limited the jurisdiction of the Court of Claims.'" *Id.* at 217 (quoting *Smoot's Case*, 82 U.S. 36, 45 (1873)).

The Federal Circuit subsequently addressed section 1500 in light of the *Keene* decision in *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545 (1994). In *Loveladies*, the plaintiff was denied a wetlands development permit and filed suit in the District Court for the District of New Jersey, challenging the denial under the APA. While an appeal was pending before the Third Circuit, the owner brought suit in the Claims Court under a theory of regulatory taking.[11] This court heard the case, ruled for plaintiff, and awarded damages. The government appealed on the basis of section 1500. The Federal Circuit articulated a two-part test for the application of section 1500. "For the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from the same operative facts, and must seek the same relief." 27 F.3d at 1551. Applying the test, the Federal Circuit upheld the judgment in plaintiff's favor, holding that the two complaints sought entirely different relief. *Id.* at 1554.

Plaintiff seizes on the use of the term, "same relief" in *Loveladies*, arguing, in effect, that the relief must be identical before section 1500 is triggered. Plaintiff ignores, however, other language in *Loveladies*. The court described the issue as "whether § 1500 denies jurisdiction to the Court of Federal Claims if, at the time a complaint for money damages is filed, there is a pending action in another court that seeks *distinctly different relief*." *Id.* at 1549 (emphasis supplied). Elsewhere the court iterates the inquiry: "If the claims are distinctly different, Loveladies are excused from the jurisdictional dance required by § 1500." *Id.* The two suits, were, of course, distinctly different. The district court proceeding was a routine suit for injunctive and

---

[10] The court stated that the trial judge in *Keene* was not the first to call the statute "anachronistic" and even noted that some have argued that the statute has never really performed its intended function. 508 U.S. at 217 (citing *A.C. Seeman, Inc. v. United States*, 5 Cl. Ct. 386, 389 (1984)); *see also* Gregory Schwartz, Section 1500 of the Judicial Code and Duplicate Suits Against the Government and Its Agents, 55 Geo. L.J. 573, 579 (1967).

[11] *See* 21 Cl. Ct. 153 (1990).

declaratory relief under section 1331 and the APA; the suit here sought compensation for a taking.

In short, we have to assume that the Federal Circuit intended by "same relief" to mean that two complaints seek relief that is not "distinctly different." That reading of *Loveladies* is, in any event, compelled by the controlling language of *Keene.* The Court viewed the precedent as dictating dismissal when "plaintiff's other suit was based on substantially the same operative facts . . . at least if *there was some overlap in the relief requested*. . . . Congress did not intend the statute to be rendered useless by a narrow concept of identity. . . ." 508 U.S. at 212-13 (emphasis supplied). Later, the Court noted that the *Casman* exception applied when a plaintiff sought "distinctly different types of relief" in the two courts. *Id.* at 214 n.9.

In sum, we believe that the inquiry is whether there is meaningful overlap both in the underlying facts and in the relief sought in the two actions. A perfect symmetry of demands for relief is not necessary.

As we indicated above, there can be no meaningful dispute about the first prong of the claim test: the operative facts asserted in the complaint are, for all practical purposes, identical. Plaintiff has included language in both complaints alleging the mismanagement and lack of prudent investment. *Compare* District Compl. ¶¶ 1-4, 20 *with* CFC Compl. ¶¶1, 23 (both complaints include the duties to account, keep adequate records, refrain from self-dealing, preserve trust assets, and invest prudently as to maximize return). Both complaints allege breaches of the same previously listed duties. *Compare* District Compl. ¶ 20 *with* CFC Compl. ¶¶ 23. It is also undisputed that plaintiff is alleging these breaches in relation to the same trust corpus (lands, buildings, mineral resources, rights in property, and tribal funds). The underlying facts are the same.

We view plaintiff's real argument to be that, because, traditionally, district courts do equity and this court gives monetary relief, whatever relief the district court grants is *per se* not duplicative of what this court can do. The fact that the plaintiff has asked for what looks like overlapping relief (money and an accounting in both courts) thus becomes immaterial. As a matter of law, the powers of the courts are different so there cannot be the same "claim" pending for purposes of section 1500.

There are at least two major problems with that approach. The first we have already discussed. Under section 1500, the court is not obligated to parse the complaint to eliminate allegations or requests for relief that are jurisdictionally unsound. The language of the complaints controls. Moreover, for section 1500 purposes, the legal theory behind the allegations or the characterizations of the requests for relief are not controlling. As a practical matter, will the same background facts be relevant, and will the relief, in substance be the same? Here, we think it is obvious that there is virtually 100 percent overlap.

The more principled reason that this literal application of section 1500 is appropriate has to do with the unique character of Indian trust claims. Unlike regulatory disputes, suits brought by Indian tribes, claiming a breach of trust, do not neatly separate between the exclusively injunctive relief typical in a district court APA review of agency action on the one hand, and, on the other hand, a suit here for money damages flowing from the consequences of that agency action. In substance, the action for breach of trust in this court is an equitable proceeding that produces a monetary remedy. Thus while the court has jurisdiction because of the demand for money, the process for getting to that relief is fundamentally equitable, meaning that there is potential overlap of both the accounting and money aspects of the two complaints.

Even though a traditional common law breach of trust claim is an action in equity, *see Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 567 (1990), equitable remedies for breach of trust include the recovery of money. As is explained in the Restatement (Second) of Trusts, in addition to seeking purely injunctive or declaratory relief, the beneficiary can recover any loss or depreciation in value of the trust estate resulting from the breach of trust, any profit made by the trustee, or any profit which would have accrued to the trust estate if there had been no breach of trust. Restatement (Second) of Trusts § 205 (1959).[12]

---

[12]*See* Comments to § 205:

> *a. Alternative remedies for breach of trust.* If the trustee commits a breach of trust, the beneficiary may have the option of pursuing a remedy which will put him in the position in which he was before the trustee committed the breach of trust; or of pursuing a remedy

Section 205 of the Restatement's revision of the Prudent Investor Rule makes clear that a trustee can be held responsible to the beneficiary for "the amount required to restore the values of the trust estate and trust distributions to what they would have been if the trust had been properly administered."

---

> which will give him any profit which the trustee has made by committing the breach of trust; or of pursuing a remedy which will put him in the position in which he would have been if the trustee had not committed the breach of trust.
>
> . . . .
>
> Comment on Clause (c):
>
> *i.* *Failure to make a profit.* If the trustee commits a breach of trust, he is chargeable with any profit which would have accrued to the trust estate if he had not committed such a breach of trust. . . . .
>
> This rule is applicable to income as well as principal. Thus, if the trustee in breach of trust fails to make the trust property productive he is liable for the amount of income which he would have received if he had not committed the breach of trust (see § 207).

The same point is stated in Pomeroys Equity Jurisdiction § 158:

> A court of equity will always by its decree declare the rights, interests, or estate of the *cestui que trust*, and will compel the trustee to do all the specific acts required of him by the terms of the trust. It often happens that the *final* relief to be obtained by the *cestui que trust* consists in a recovery of money. This remedy the courts of equity will always decree when necessary, whether it is confined to the payment of a single specific sum, or involves an accounting by the trustee for all that he has done in pursuance of the trust . . . .

John N. Pomeroy, A Treatise on Equity Jurisprudence § 158 (Spencer Symons ed., 5th ed. 2002).

Restatement (Third) of Trusts, Prudent Investor Rule § 205(b) (1992). The comments to that section support our holding that the equitable relief available for a breach of trust includes profits lost due to mismanagement and improper investment:

> If the breach of trust causes a loss, including any failure to realize income, capital gain, or appreciation that would have resulted from proper administration, the beneficiaries may surcharge the trustee for the amount necessary to compensate fully for the consequences of the breach. Thus, the recovery for an improper investment by a trustee would ordinarily be the difference between (1) the value of the investment and its income and other product at the time of surcharge and (2) the amount of the funds expended in making the investment, increased (or decreased) by the amount of the total return (or negative total return) that would have accrued to the trust and its beneficiaries if the funds had been properly invested.

*Id*. § 205 cmt. i.

Sections 208-211 of the Restatement (Second) deal specifically with liability of the trustee for selling property it was his duty to retain, liability for failing to sell trust property that he had a duty to sell, liability for purchasing property it was not his duty to purchase, and liability for failing to purchase property it was his duty to purchase.[13] *See also* Restatement (First) of

---

[13] Section 207, Liability for Interest, presupposes a monetary recovery for breach of trust:

> (1) Where the trustee commits a breach of trust and thereby incurs a liability for a certain amount of money with interest thereon, he is chargeable with interest . . . .
> (2) Where the trustee is chargeable with interest, he is chargeable with simple and not compound interest, unless
> (a) he has received compound interest, or
> (b) he has received a profit . . . , or
> (c) it was his duty to accumulate the income.

Restatement (Second) of Trusts § 207 (1959).

Restitution § 4(f) (1937) (stating that a person entitled to restitution may receive a number of remedies including "decree in equity for the payment of money").

In short, not only can the trustee be forced to return money to the trust account, the trustee can also be compelled to put new money into the account.[14] Thus the aspects of the district court request for relief, which plaintiff characterizes as unique because they arise in equity, are nevertheless the same requests for relief which give this court jurisdiction. The fact that the money comes from a cause of action in equity is immaterial. This is a critical part of the holding in *White Mountain Apache*, where Justice Souter wrote that, once a specific fiduciary duty is established, "general trust law [is to be] considered in drawing the inference that Congress intended damages to remedy a breach of obligation." 537 U.S. at 477. *See also Mitchell*, 463 U.S. at 225-26 (holding that the fiduciary obligations at issue could be fairly interpreted as mandating compensation, given that the existence of a trust exposes the trustee to liability for damages should it breach its obligations) (citing Restatement (Second) of Trusts §§ 205-212 (1959)); *The Navajo Nation v. United States*, 501 F.3d 1327, 1343 (Fed. Cir. 2007) ("Where the government exercises actual control within its authority, neither Congress nor the agency needs to codify such actual control for a fiduciary trust relationship that is enforceable by money damages to arise") (citing *White Mountain Apache*, 537 U.S. at 475); *The Shoshone Indian Tribe of the Wind River Reservation v. United States*, 58 Fed. Cl. 77, 82 (2003) (holding that plaintiff had established the existence of fiduciary duties and that it could thus recover money damages for any breach of those duties).

---

[14] At oral argument, plaintiff's counsel attempted to assure the court that monetary relief in district court would consist only of money already somewhere in the government's possession (old money), and that the money damages in this court would consist entirely of "new money," *i.e.*, money that should have been earned but never was. Regardless of plaintiff's intent, it is without question that equitable remedies for breach of trust, as shown by the above quoted authorities, are concerned with far more than just "old money." Similarly, in this court, no distinction is to be found between money "old" and "new." Rather, if successful, a plaintiff is made whole, to the extent possible, by the payment of money for the government's breaches of trust. That remedy is sought in both courts and thus section 1500 is implicated.

Plaintiff's argument that, under *Bowen*, the transfer of money does not change equitable relief into money damages, *see* 487 U.S. at 893-94, is thus irrelevant. Although the Court held that the term "money damages" found in 5 U.S.C. § 702 was distinct from the more general meaning of "monetary relief," 487 U.S. at 896-901, section 1500 makes no such distinction.

As this court has held, and the Supreme Court has acknowledged, it is the form of the relief (money) that is relevant. *Harbuck v. United States*, 58 Fed. Cl. 266, 269 (2003) (citing *Keene*, 508 U.S. at 212), *aff'd*, 378 F.3d 1324 (2004). However characterized, the calculus involved in determining how much money the plaintiff is owed would be the same in both courts. Although plaintiff refers to the money requested here as "damages," the action here is for a breach of trust, and the means for proving breach and financial injury would be the same as in the district court.[15]

In addition, as we discussed above, although a pre-liability, stand-alone general accounting is unavailable in this court, after a presentation of sufficient evidence, an accounting is unavoidable here and will be coextensive with all the plaintiff's claims of breach. The accounting is necessary to establish the quantum of damages. Independent, therefore, of the monetary relief aspects of the two complaints, there is overlap in the request for an accounting. Both actions, in sum, seek a restatement of accounts, restitution, and disgorgement and both will require an accounting. There is plainly substantial overlap in the operative facts as well as in the relief requested. That being the case, unfortunately for plaintiff, section 1500 is a bar.[16]

---

[15] "The inclusion of other and different requested relief in the two complaints does not avoid the application of [section 1500]. As long as the same relief is sought in both cases – here money damages – the second prong of the [section 1500] requirement . . . is satisfied." *Harbuck v. United States*, 378 F.3d 1324, 1329 (Fed. Cir. 2004) (citing *Keene*, 508 U.S. at 212) (internal citations omitted).

[16] We recognize that, if the filing dates of the complaints had been reversed, section 1500 would not be a problem and the two courts would use traditional principles of comity, collateral estoppel, and res judicata to sort out any duplication. While this illustrates the lack of need for section 1500 and its arbitrariness, we can do no more than make this observation and suggest that plaintiff attempt a legislative solution through a congressional reference or a

CONCLUSION

Section1500 divests this court of jurisdiction over plaintiff's claim because it arises from the same operative facts and seeks the same relief as the claim in district court. Accordingly, defendant's motion to dismiss is granted. The clerk is directed to dismiss the complaint without prejudice for lack of jurisdiction pursuant to RCFC 12(b)(1). No costs.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Judge

new jurisdictional statute.