# EXHIBIT 2 TO DEFENDANT'S NOTICE OF FILING

# In the United States Court of Federal Claims

No. 06-917

(Filed: June 23, 2008)

* * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| EASTERN SHAWNEE TRIBE OF OKLAHOMA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Indian trust claims; subject matter jurisdiction; related prior suit in different court; 28 U.S.C. § 1500; operative material facts; different relief |

* * * * * * * * * * * * * * * * * * * * * * * * *

Brian J. Leinbach, Engstrom, Lipscomb, & Lack, Los Angeles, California, for plaintiff. With him on the briefs were Patricia A. Marks, Woodbine, Maryland, Gregory A. Yates, Law Offices of Gregory A. Yates, Encino, California, and Keith Griffin, Girardi & Keese, Los Angeles, California.

Jody H. Schwarz, Trial Attorney, Environment and Natural Resources Division, Department of Justice, Washington, D.C., for defendant. With her on the briefs were Anthony P. Hoang, Environmental and Natural Resources Division, Department of Justice, Washington, D.C., Shani Walker, Department of the Interior, Washington, D.C., and Teresa E. Dawson, Department of the Treasury, Washington, D.C.

**OPINION AND ORDER**

On December 28, 2006, the Eastern Shawnee Tribe of Oklahoma ("Eastern Shawnee" or "plaintiff"), a federally recognized Indian tribe, filed a complaint in this court ("C.F.C. Compl.") seeking damages for the United States' alleged breach of its fiduciary duties as trustee of Eastern Shawnee's assets and property. C.F.C. Compl. ¶ 1. Eight days earlier, on December 20, 2006, Eastern Shawnee had filed a complaint in the United States District Court for the District of

Columbia against the Secretaries of the Interior and the Treasury and the Special Trustee for American Indians, seeking an accounting and reconciliation of its trust funds as well as injunctive and equitable relief related to the government's trust duties. *See* Complaint, *Eastern Shawnee Tribe of Oklahoma v. Kempthorne*, No. 1:06-CV-2162 (D.D.C. filed Dec. 20, 2006) ("D.D.C. Compl."). Because of the potential overlap in these two actions, this court issued an order on January 28, 2008, requesting that plaintiff show cause why this case should not be dismissed in light of 28 U.S.C. § 1500. That statute in essence bars this court from exercising jurisdiction over a claim if the same claim was already pending in another court. *See Keene Corp. v. United States*, 508 U.S. 200 (1993); *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545 (Fed. Cir. 1994) (en banc).[1] The parties have responded with briefs in which plaintiff supports jurisdiction and defendant argues that the case must be dismissed on jurisdictional grounds. *See* Pl.'s Resp. to Order to Show Cause ("Pl.'s Resp.") at 4-8; Def.'s Response In Support of Order to Show Cause ("Def.'s Resp.") at 1. A hearing was held on June 10, 2008, and this jurisdictional controversy is now ready for disposition.

## BACKGROUND[2]

Eastern Shawnee is recognized by the United States as a sovereign Indian tribe. The government holds and administers trust funds for the tribe, and it manages or oversees the management of natural resources located on tribal lands. D.D.C. Compl. ¶¶ 8-9; C.F.C. Compl. ¶¶ 11-16. In 1994, Congress enacted the American Indian Trust Fund Management Reform Act, Pub. L. No. 103-412, 108 Stat. 4239 (Oct. 25, 1994) (codified at 25 U.S.C. §§ 4001-61), specifying, among other things, that the Secretary of the Interior "shall account for the daily and annual balance of all funds held in trust by the United States for the benefit of an Indian Tribe or an individual Indian which are deposited or invested pursuant to the Act of June 24, 1938 (25 U.S.C. [§] 162)." 25 U.S.C. § 4011(a). In addition, the Secretary was obliged to prepare "a report identifying for each tribal trust fund account for which the Secretary is responsible a balance reconciled as of September 30, 1995." 25 U.S.C. § 4044. To meet these statutory

---

[1]Section 1500 of Title 28 provides that

> [t]he United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

[2]The recitations that follow do not constitute findings of fact by the court. Rather, the description of the case is drawn from the parties' filings and is either undisputed, except where a factual controversy is explicitly noted, or is alleged and assumed to be true.

requirements, in 1996 the government retained the accounting firm of Arthur Andersen LLP to prepare and issue an accounting report to plaintiff. C.F.C. Compl. ¶ 28. That report was issued in due course, but Eastern Shawnee contests the adequacy of the report. *Id.*; Hr'g Tr. 27:1 to 27:5 (June 10, 2008).[3]

Both complaints set forth a variety of alleged breaches by the government of fiduciary duties and mismanagement of plaintiff's trust corpus. *See* D.D.C. Compl. ¶¶ 18-21; C.F.C. Compl. ¶¶ 22-24. The allegations include: failure to provide Eastern Shawnee with a full, accurate, and timely accounting of its trust funds; failure to maintain accurate books and records of the plaintiff's account; failure to disclose known losses; failure or refusal to reimburse trust beneficiaries for losses to their trust funds; and failure properly to create certain trust accounts and deposit the appropriate monies in those accounts. *See* D.D.C. Compl. ¶¶ 21, 29; C.F.C. Compl. ¶¶ 22-23.

The primary difference in the two contemporaneously filed complaints is that the complaint in district court focuses on equitable relief while in this court plaintiff seeks monetary damages. Eastern Shawnee asks the district court for a declaration that the defendants have not provided an adequate accounting of the plaintiff's trust funds, a declaration that this failure has deprived the plaintiff of the ability to identify whether it has suffered a loss and specific claims it might have, an injunction requiring the defendants to produce a complete, accurate, and up-to-date accounting, a judicial order preserving any claims that accounting might reveal, an order directing the defendants to manage all of the plaintiff's current and future trust funds in full compliance with all applicable law and with their duties as guardian and trustee, an award for cost of suit, and "such other relief as may be just and equitable." D.D.C. Compl. Prayer for Relief ¶¶ 1-7. In this court, Eastern Shawnee seeks consequential damages, incidental damages, compound and pre-judgment interest, costs of suit, attorneys' fees, and "[a]ny and all other relief or damages as permitted by this [c]ourt or applicable law." C.F.C. Compl. Prayer for Relief, ¶¶ 1-7.

The complaint in this court explicitly (and commendably) acknowledges the link between the two cases:

---

[3]In this connection, the Indian Trust Accounting Statute, enacted annually as part of the appropriations acts for the Department of the Interior, provides that the statute of limitations does not begin to run on a claim against the United States concerning losses to or mismanagement of Indian trust funds until claimants have been furnished with an accounting. *See*, *e.g.*, Pub. L. No. 108-108, 117 Stat. 1241, 1263 (Nov. 10, 2003); *Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1344 & n.2 (Fed. Cir. 2004); *Wolfchild v. United States*, 62 Fed. Cl. 521, 547-49 (2004).

> Plaintiff has commenced an action against the Secretary of the Interior, the Secretary of the Treasury and the Special Trustee for Indian Affairs, in the United States District court for the District of Columbia, [*Eastern Shawnee Tribe of Oklahoma] v. Kempthorne, et. al.* To the extent that such an accounting to which the Plaintiff is entitled[,] determines or otherwise reveals that the Plaintiff has one or more additional monetary claims against the Defendant, the Plaintiff seeks damages on those claims in this action.

C.F.C. Compl. ¶ 31; *see also* C.F.C. Compl. ¶ 23 ("[B]efore filing this action, the Plaintiff filed a complaint in the United States District Court for the District of Columbia demanding a full accounting of its trust accounts, trust assets and trust property.") Given this understanding of a direct relationship between the two cases, the jurisdictional arguments by the parties focus on whether the operative facts underpinning the claims in the two cases are divergent enough that two different claims are involved, and, alternatively, whether the complaints seek sufficiently different relief that Section 1500 should not be invoked to bar this court's jurisdiction over Eastern Shawnee's claims in this court.

**STANDARDS FOR DECISION**

The jurisdiction of a federal court must be established as a threshold matter before the court may proceed with the merits of any action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998); *see* Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). Subject matter jurisdiction may be challenged by either party at any time, by the court *sua sponte*, or even on appeal. *Booth v. United States*, 990 F.2d 617, 620 (Fed. Cir. 1993).

As plaintiff, Eastern Shawnee bears the burden of establishing that the court has subject matter jurisdiction to consider its claims by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *see McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936). In determining whether subject matter jurisdiction exists, a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995); *see also Hamlet v. United States*, 873 F.2d 1414, 1415-16 (Fed. Cir. 1989).

This court has jurisdiction under the Tucker Act over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Correlatively, the Indian Tucker Act confers jurisdiction on this court for claims against the United States brought by "any tribe, band, or other identifiable group of American Indians . . . whenever such claim is one arising under the Constitution, laws or treaties of the United States, or Executive orders of the President, or is one which would otherwise be cognizable in the Court of Federal Claims."

28 U.S.C. § 1505. These statutes themselves, however, do not confer on a plaintiff a right to recovery; the plaintiff must also identify a substantive right that is enforceable against the United States for money damages. *See United States v. Testan*, 424 U.S. 392, 398 (1976) (Tucker Act claims); *accord United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (Indian Tucker Act claims). For Indian trust claims, a substantive right can be found in statutes and regulations from which it can be inferred both that the government assumed fiduciary responsibilities related to its trust relationship with Indian tribes and that a monetary remedy for breach has been provided. *See United States v. Mitchell*, 463 U.S. 206 (1983). However, any jurisdictional grant under the Indian Tucker Act is circumscribed by the bar of Section 1500.

**ANALYSIS**

Section 1500 restricts the subject matter jurisdiction of the Court of Federal Claims by forestalling "any claim for or in respect to which the plaintiff . . . has pending in any other court any suit or process against the United States." 28 U.S.C. § 1500. The purpose of Section 1500 is to "bar . . . the claim of a plaintiff, who, upon filing, has an action pending in any other court 'for or in respect to' the same claim." *Keene Corp. v. United States*, 508 U.S. 200, 209 (1992). "Thus, [S]ection 1500 divests this court of subject matter jurisdiction when a plaintiff has elected to file the same claim in another court prior to filing suit in this [c]ourt." *Cooke v. United States*, 77 Fed. Cl. 173, 176 (2007). Whether another claim is "pending" for purposes of Section 1500 is determined at the time at which the suit is filed in this court, not some later time. *See Loveladies Harbor*, 27 F.3d at 1548.[4] And, "[f]or the Court of Federal Claims to be precluded from hearing a claim under [Section] 1500, the claim pending in another court must arise from *the same operative facts*, and must seek *the same relief*." *Id.* at 1551 (emphasis in original); *see also Harbuck v. United States*, 378 F.3d 1324, 1328-29 (Fed. Cir. 2004).

A. "Same Operative Facts"

"Claims are the same where they arise from the same operative facts even if the operative facts support different legal theories which cannot all be brought in one court." *Harbuck*, 378 F.3d at 1329 (quoting *Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1567 (Fed. Cir. 1988)). However, "[c]laims involving the same general factual circumstances, but distinct material facts[,] can fail to trigger [S]ection 1500." *Branch v. United States*, 29 Fed. Cl. 606, 609 (1993); *see also d'Abrera v. United States*, 78 Fed. Cl. 51, 58-59 (2007). Accordingly, if a material factual difference exists between two claims, they are not the same for purposes of Section 1500. *See Heritage Minerals, Inc. v. United States*, 71 Fed. Cl. 710, 716 (2006); *Williams v. United States*, 71 Fed. Cl. 194, 199-200 (2006).

---

[4]Eastern Shawnee concedes that its complaint filed in district court was pending at the time they filed their complaint in this court. *See* Pl.'s Resp. at 4-5.

In *Keene*, the Supreme Court instructed that a careful comparison of the operative facts for the claims is required. 508 U.S. at 210; *see also Harbuck*, 378 F.3d at 1324; *Loveladies*, 27 F.3d at 1553-54. The Supreme Court noted in *Keene* that Congress did not limit Section 1500 to claims "for . . . which" the plaintiff has sued in another court, but included those "in respect to which" claims by him were pending elsewhere. *Keene*, 508 U.S. at 213. Accordingly, the Court concluded that the statutory text "make[s] it clear that Congress did not intend the statute to be rendered useless by a narrow concept of identity providing a correspondingly liberal opportunity to maintain two suits arising from the same factual foundation." *Id*.

Eastern Shawnee contends that the complaints "contain material factual differences in that the two complaints involve different conduct." Pl.'s Resp. at 11. Eastern Shawnee asserts that the basis of the district court complaint is the failure to provide an adequate accounting, while the complaint in this court addresses the failure of the government properly to manage monetary and non-monetary trust assets. *Id*. at 11-12. This proffered distinction is not persuasive in light of prior precedents.

For example, in *Harbuck*, the plaintiff had filed claims under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, 2000e-1 to 2000e-17, and the Equal Pay Act, 29 U.S.C. § 206(d), in district court, which transferred the latter claim to this court. *Harbuck*, 378 F.3d at 1326. This court dismissed plaintiff's claim under the Equal Pay Act because it consisted of "a subset of the same factual allegations as [plaintiff's] broader District Court case." *Harbuck v. United States*, 58 Fed. Cl. 266, 269 (2003). The court of appeals affirmed, holding that the two claims arose from the same set of operative facts, concluding that "[t]he difference between the two theories upon which [plaintiff] relies are but different manifestations of the same underlying claim that the Air Force discriminated against women by paying them less than men." *Harbuck*, 378 F.3d at 1329.

Here also, the claims in the case in the district court and in the instant action are basically different manifestations of the same underlying claim that the government failed properly to administer and manage Eastern Shawnee's trust land and assets. The two claims involve the same parties, the same trust corpus, and the same breach of the same trust duties over the same time period. The only apparent factual difference is a narrower focus on the accounting aspects of the alleged breaches of trust duties in the district court complaint.

Eastern Shawnee further relies upon *d'Abrera* where a copyright infringement claim was brought in this court after a Lanham Act claim had been filed in district court. *See d'Abrera*, 78 Fed. Cl. 51. One claim involved reproducing and distributing photographs without permission, license, or consent, while the other claim involved "deceiving individuals into believing that the book and the photographs were the unique work of [the defendants]." *Id*. at 58. Despite the existence of similar background facts in the *d'Abrera* action, the material operative facts were different and jurisdiction in this court was thus proper. Similarly, in *Heritage Minerals*, plaintiffs filed a taking action in this court based upon the alleged installation and maintenance of groundwater-monitoring wells on their property. 71 Fed. Cl. at 710-11. A previously filed claim

in district court was based upon allegations that the Navy had contaminated the groundwater on their property. The court held that the new claim was based on different operative facts because the installation and maintenance of monitoring wells constituted "later and different conduct." *Id*. To the same effect, in *Cooke* the court had before it a claim filed in this court under the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), alleging that the government engaged in retaliatory conduct in the form of denied opportunities and changes in the plaintiff's employment. That claim was considered to involve different operative facts from a prior claim filed in district court under the Equal Pay Act. 77 Fed. Cl. at 175-78.

In contrast, Eastern Shawnee's two claims have no distinguishing characteristics. The government's role here is essentially the same, properly to manage and account for the tribe's trusts and assets. The conduct alleged in the district court case of failing to provide a full and accurate accounting is encompassed within the averments of the instant case, which addresses "the failure of the CFC defendants to properly manage monetary and non-monetary trust assets." Pl.'s Resp. at 11-12; *see* C.F.C. Compl. ¶¶ 23, 30-34. Both actions turn on the government's past actions related to its management and administration of Eastern Shawnee's same tribal trust lands and assets. *See* D.D.C. Compl. ¶¶ 17-19; C.F.C. Compl. ¶¶ 13, 23-24, 30-31. Indeed, both suits specify that Eastern Shawnee seeks an accounting to determine whether, and to what extent, the Tribe has suffered losses as a result of the government's breaches of trust. *See* D.D.C. Compl. ¶¶ 17-19; C.F.C. Compl. ¶ 23.

Eastern Shawnee's posture in its two cases bears many similarities to the circumstances at issue in *Ak-Chin Indian Cmty. v. United States*, 80 Fed. Cl. 305 (2008), and *Tohono O'Odham Nation v. United States*, 79 Fed. Cl. 645 (2007). As the court stated in *Ak-Chin Indian Community*: "It is not apparent to the court how it could address facts related to the government's duty to invest and deposit plaintiff's trust funds without considering the facts related to the government's overall trust obligations owed to plaintiff, including its duty to account." *Ak-Chin*, 80 Fed. Cl. at 319; *see also Tohono O'Odham Nation*, 79 Fed. Cl. at 652 ("The two complaints clearly involve the same parties, the same trust corpus, the same asserted trust obligations, and the same asserted breaches of trust over the same period of time."). Thus, the two claims are based upon the same operative facts and constitute the "same claim" for Section 1500 purposes.

### B. "Same Relief"

If the operative facts of two claims are the same, Section 1500 applies if the "same relief" is sought. *Keene*, 508 U.S. at 212. For Section 1500 to apply, the relief requested need not be identical as long as "there [is] some overlap in the relief requested." *Id*. In other words, to avoid the application of Section 1500, the relief requested must be "distinctly different." *Loveladies*, 27 F.3d at 1552. Thus, the inclusion of other and different requested relief does not bar application of Section 1500. *Id.* In *Tohono O'odham Nation*, the court commented that "for [S]ection 1500 purposes, the legal theory behind the allegations or the characterizations of the requests for relief are not controlling." 79 Fed. Cl. at 656. The court stated that the relevant inquiry is: "will the relief, in substance, be the same?" *Id*.

Eastern Shawnee contends that it does not seek the same relief in the actions because the relief sought in district court is solely equitable and the relief sought here is solely monetary. Pl.'s Resp. at 16. However, in substance the relief sought in the two complaints, an accounting and reimbursement for losses resulting from mismanagement, is overlapping. As explained below, if Eastern Shawnee were to establish liability for breaches of trust in this proceeding, an accounting would be required, and that accounting would overlap with the accounting available in equitable proceedings such as the case brought in district court. In *Tohono*, the court recognized that:

> Unlike regulatory disputes, suits brought by Indian tribes, claiming a breach of trust, do not neatly separate between the exclusively injunctive relief typical in a district court APA review of agency action on the one hand, and, on the other hand, a suit here for money damages flowing from the consequences of that agency action. In substance, the action for breach of trust in this court is an equitable proceeding that produces a monetary remedy. Thus while the court has jurisdiction because of the demand for money, the process for getting to that relief is fundamentally equitable, meaning that there is potential overlap of both the accounting and money aspects of the two complaints.

79 Fed. Cl. at 657. In short, once liability has been established, the equitable "relief" of an accounting is a necessary precursor to an award of damages. Moreover, this is not a situation where jurisdiction over an equitable accounting rests with district courts while this court is barred from undertaking an accounting. Instead, this court has the authority "to require an accounting in aid of its jurisdiction to render a money judgment." *Klamath & Modoc Tribes v. United States*, 174 Ct. Cl. 483, 490-91 (1966). In *Tohono*, this court observed that if a legal trust does exist and money is recoverable for breach, then "[t]he United States, as trustee, would have to meet plaintiff's prima facie case of breach with a full accounting for its conduct. In short, assuming this action [was] to proceed in this court, and plaintiff satisfied its burdens of proof, what would ensue would amount to an accounting, albeit in aid of judgment." 79 Fed. Cl. at 653.[5]

Eastern Shawnee recognizes that the accounting sought in district court is inextricably linked to the recovery of damages in this court. In its district court complaint, Eastern Shawnee specifically asks for a judicial order preserving any claims that an accounting might reveal. D.D.C. Compl. ¶ 34 ("Plaintiff *is entitled to declaratory and injunctive relief* requiring the Defendants to provide the Plaintiff with a full, complete and up-to-date accounting of all of the Plaintiff's trust funds, and *preserving any claims which might be identified* once that accounting

---

[5]In *Tohono*, the court pointed out that, as "explained in the *Restatement (Second) of Trusts*, in addition to seeking purely injunctive or declaratory relief, the beneficiary can recover any loss or depreciation in value of the trust estate resulting from the breach of trust, any profit made by the trustee, or any profit which would have accrued to the trust estate if there had been no breach of trust." 79 Fed. Cl. at 657 (citing *Restatement (Second) of Trusts* § 205 (1959)).

is revealed.") (emphasis added). Moreover, Eastern Shawnee never states any purpose for its request for an accounting in the district court besides the desire to determine if mismanagement has occurred and it has suffered losses. *See* D.D.C. Compl. ¶¶ 18, 21, 33, 38. Correspondingly, in this court, Eastern Shawnee specifically requests "damages on those [*i.e.*, the district court] claims in this action." C.F.C. Compl. ¶ 31. Counsel for Eastern Shawnee was candid with the court in addressing the means by which the Tribe might ultimately obtain a monetary award:

> THE COURT: Well, how do you propose to get money? Let's say that the action that's pending before Judge Robertson [in the district court] produces an indication or even a result that the accounting has not been proper, the historical accounting has not been proper and the Eastern Shawnee actually should have some more money in the trust accounts. How do you propose to get that money?
>
> MR. LEINBACH: Well, Your Honor, you do not request that money in a District Court. I presume that would be a claim that would be incorporated in this case presently, because we've already made general allegations that the U.S. Government has not properly invested trust assets, monetary assets, and has not properly collected monies due on such things as oil and gas royalties and what not. So those claims are already made here in this case for monetary damages.
> It may be very well that a full and complete trust accounting that's performed pursuant to some order in the District Court may shed some light as to the value of those claims, but those claims are already made here in this Court.

Hr'g Tr. 25:6 to 26:3 (June 10, 2008). In effect, the equitable relief sought in the district court has no independent, distinguishing significance from the monetary relief sought in this court.

The question whether the equitable relief sought in an action has any independent significance compared to monetary relief awardable in this court has been important in applying Section 1500. In *Kidwell v. Dep't of Army*, 56 F.3d 279, 285 (D.C. Cir. 1995), the D.C. Circuit held that a claim seeking the equitable relief of a correction in military records had value independent from any monetary payments that might result from the requested change in records. If the equitable relief requested was "in essence" a claim for monetary damages, then the claim would fall within the exclusive jurisdiction of this court. *Id*. at 284. However, the D.C. Circuit held that the corrective equitable relief sought would lift the shame of receiving a less-than-honorable discharge and thus that relief was "in form and substance, not 'negligible in comparison' to monetary claims [Mr. Kidwell] may raise in the future." *Id*. at 286 (citing *Hahn v. United States*, 757 F.2d 581, 589 (3d Cir. 1985)). Here, in contrast, because the accounting does not have considerable value independent of monetary recovery, the accounting sought is "in essence" a claim for money damages.

Accordingly, while Eastern Shawnee correctly asserts that it does not specifically make a request for money damages in district court, Pl.'s Resp. at 18, in substance the requested relief overlaps with the request for money damages in this court. As a result, the relief sought in the district court case and this case is not "distinctly different," *Loveladies*, 27 F.3d at 1552, and Section 1500 bars this court from exercising jurisdiction over Eastern Shawnee's claims.

**CONCLUSION**

Section 1500 precludes this court from exercising jurisdiction over Eastern Shawnee's claim because it arises from the same operative facts and seeks essentially the same relief as that sought by the Tribe in a case filed eight days earlier in district court. Accordingly, this case must be dismissed without prejudice under RCFC 12(b)(1). The clerk is directed to enter judgment to this effect.

No costs.

IT IS SO ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge