# EXHIBIT 1 TO DEFENDANT'S NOTICE OF FILING

# In the United States Court of Federal Claims

No. 06-910L

(Filed: August 22, 2008)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * *<br>NEZ PERCE TRIBE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant.<br>* * * * * * * * * * * * * * * * * * * * * * * | Indian trust claims brought under the Indian Tucker Act, 28 U.S.C. § 1505; subject matter jurisdiction circumscribed by 28 U.S.C. § 1500; same-day filings; effect of time of filing during day |

K. Heidi Gudgell, Lapwai, Idaho, for plaintiff. Michael A. Lopez, Lapwai, Idaho, represented plaintiff at the evidentiary hearing.

E. Kenneth Stegeby, Natural Resources Section, Environment and Natural Resources Division, U.S. Department of Justice, Washington, D.C., for defendant. With him on the briefs and at the evidentiary hearing was Anthony P. Hoang, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C. Of counsel were Michael Bianco, Office of the Solicitor, United States Department of the Interior, Washington, D.C., and Teresa E. Dawson, Office of the Chief Counsel, Financial Management Service, United States Department of the Treasury, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Judge.

In this case, the Nez Perce Tribe ("Nez Perce," the "Tribe," or "plaintiff") claims that "[t]he United States has breached, and is breaching, its trust responsibilities to the Tribe" and that these breaches have caused the Tribe to sustain financial losses, the precise extent of which is indeterminate due to the government's failure to maintain accurate records of its management of the Tribe's assets. Compl. ¶¶ 27-28. On the same day it filed the instant action in this court, the Tribe also filed a complaint against the government in the United States District Court for the

District of Columbia (the "district court"). *Nez Perce Tribe v. Kempthorne, et al.*, No. 1:06-cv-02239-JR (D.D.C.). "[T]he cases present the same operative claims and are based on the same operative facts; and [p]laintiff seeks essentially the same relief with respect to its trust fund accounts." Joint Status Report (Apr. 1, 2008) at 1. After reviewing the parties' joint status report of April 1, 2008, the court issued an Order to Show Cause directing the Tribe to demonstrate why its case should not be dismissed for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1500.[1] The issue was briefed and then argued by the parties at a hearing on July 22, 2008, and factual predicates for the parties' contentions were addressed in an evidentiary hearing on jurisdictional facts on August 5, 2008. The jurisdictional questions are now ready for disposition.

## JURISDICTIONAL FACTS[2]

The Nez Perce Tribe is a federally recognized Indian tribe and the beneficial owner of assets, including land and natural resources, held for it in trust by the United States. Compl. at ¶¶ 1, 11. The Tribe's two complaints alleging breaches of the United States' trust responsibilities were filed on December 28, 2006.

### A. *Filing Circumstances*

Factually, the parties have focused on whether the complaint in this court was filed earlier in the day than the complaint filed in the district court. Nez Perce asserts that its complaint in this court was filed at approximately 9:00 a.m. on December 28, 2006. Pl.'s Resp. to Order to Show Cause ("Pl.'s Resp.") at 2. As verification of the time of filing, the Tribe proffers a Federal Express confirmation indicating delivery to the office of the Clerk of the Court of Federal Claims at 9:00 a.m. on December 28, 2006, as well as a sworn declaration by K. Heidi

---

[1]Section 1500 bars this court's exercise of jurisdiction to consider a cause of action where, at the time of filing, a suit respecting the same claim was pending in another court:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500. *See Keene Corp. v. United States*, 508 U.S. 200, 209, 212 (1993) (applying Section 1500); *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1549 (Fed. Cir. 1994) (*en banc*) (same).

[2]The court's jurisdictional findings are entered pursuant to Rule 52(a) of the Rules of the Court of Federal Claims ("RCFC"). Those findings are briefly set out in this background section; more detailed findings of fact and rulings on questions of mixed fact and law are set out in the analysis.

Case 1:06-cv-00931-CFL Document 37 Filed 08/25/2008 Page 3 of 12

Gudgell, counsel for the Tribe in this action, attesting to the fact that she prepared and sent the complaint so delivered. Joint Status Report (Apr. 1, 2008) Attach. 1 at 1-2 (Decl. of K. Heidi Gudgell ("Gudgell Decl.")); *id.* at 3-4 (Federal Express Tracking Receipt). The Tribe further avers that its district court complaint was delivered by Federal Express to that court for filing at 10:28 a.m. on December 28, 2006. Pl.'s Resp. at 2, Attach. 3 ¶ 7 (Decl. of Donald R. Wharton); Joint Status Report Attach. 2 ¶¶ 3-4 (Decl. of Gayla Fills Pipe, the legal assistant with the Native American Rights Fund ("NARF") who sent the district court complaint). However, the filing fee for that complaint was omitted from the Federal Express package. Pl.'s Resp. at 3; Joint Status Report Attach. 3 ¶¶ 3-4 (Decl. of Dawn Sturdevant Baum ("Baum Decl.")). The filing fee was subsequently delivered to the district court clerk's office at approximately 2:00 p.m. Pl.'s Resp. at 3; Baum Decl. ¶ 4; Tr. 79:18 to 82:25, 85:2-7 (Test. of Dawn Baum).[3] Ms. Gudgell's declaration also avers that the Chief Deputy Clerk of the United States District Court for the District of Columbia, Mr. Greg Hughes, confirmed to her that the district court's filing procedures dictated that a complaint would not have been filed until the filing fee was paid. Pl.'s Resp. at 3; Gudgell Decl. ¶ 6.

B. *Procedural History*

After a one-year temporary stay during which the parties engaged in settlement negotiations, the court responded to a joint status report filed by the parties by issuing an Order to Show Cause why the Tribe's complaint should not be dismissed for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1500. Order to Show Cause (Apr. 9, 2008). The Tribe responded by supporting this court's jurisdiction over its complaint. Pl.'s Resp. at 3-6. The government responded that the case brought by Nez Perce in this court should be dismissed for lack of subject matter jurisdiction due to the applicability of Section 1500 as a bar. Def.'s Resp. at 17-18. Neither party disputes the fact that the two complaints were both filed on the same day, December 28, 2006. Joint Status Report (Apr. 1, 2008) at 2-3, 4.

**STANDARDS FOR DECISION**

This court's jurisdiction must be established before the court may consider the merits of an action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998). As plaintiff, Nez Perce bears the burden of establishing by a preponderance of the evidence that this court has juridical power to hear its case. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *see McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936). In ascertaining whether subject matter jurisdiction exists, a court must accept as true all facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

---

[3]Citations to the transcript of the evidentiary hearing held on August 5, 2008 are to "Tr. __."

Under the Tucker Act, this court has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). A related statute, the Indian Tucker Act, grants this court jurisdiction for claims against the United States brought by "any tribe, band, or other identifiable group of American Indians . . . whenever such claim is one arising under the Constitution, laws or treaties of the United States, or Executive orders of the President, or is one which otherwise would be cognizable in the Court of Federal Claims." 28 U.S.C. § 1505. Section 1500, however, limits the jurisdiction of this court over claims otherwise cognizable under the Tucker Act and Indian Tucker Act.

If a material factual dispute arises regarding jurisdiction, the court may institute proceedings to resolve the pertinent jurisdictional issues. *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993); *Association of Merger Dealers, LLC v. Tosco Corp.*, 167 F. Supp. 2d 65 (D.D.C. 2001). In this instance, the court first requested and received documentary submissions from the parties, including affidavits and declarations, and then conducted an evidentiary hearing at which percipient witnesses testified about the circumstances involved in filing the complaints in this court and in the district court. *See Lechliter v. United States*, 70 Fed. Cl. 536, 543 (2006) ("[T]he court may look beyond the pleadings and 'inquire into jurisdictional facts' in order to determine whether jurisdiction exists." (quoting *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991))).

## ANALYSIS

### *A. The Jurisdictional Limitation Arising From Section 1500*

1. *Textual analysis of Section 1500.*

Section 1500 has its origins in a Reconstruction-era statute enacted to limit duplicative lawsuits by Southern cotton planters who sought to recover the value of property they had been forced to abandon during the course of the Civil War. *See Keene*, 508 U.S. at 206-07. The law sought to achieve this purpose by "prohibit[ing] anyone from filing or prosecuting in the Court of Claims 'any claim . . . for or in respect to which he . . . *shall have commenced and has pending*' an action in any other court" against the United States. *Id.* at 206 (quoting the Act of June 25, 1868, ch. 71, § 8, 15 Stat. 77) (omission in original) (emphasis added). In its present form, Section 1500 states that "[t]he United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff . . . *has pending* in any other court any suit or process against the United States or any person . . . acting or professing to act . . . under the authority of the United States." 28 U.S.C. § 1500 (emphasis added). The "shall have commenced" language from the Reconstruction-era statute has been omitted, but the "has pending" text remains. In *Keene*, the Supreme Court concluded that Section 1500 "bar[s] jurisdiction over the claim of a plaintiff who, *upon filing* [with the Court of Federal Claims], has

an action pending in any other court 'for or in respect to' the same claim." 508 U.S. at 209 (emphasis added).

The parties take quite different positions regarding the "has pending" language in Section 1500. The Tribe contends that jurisdiction is proper over its case in this court because the complaint was filed here before the Tribe's corresponding complaint was filed in district court even though the two cases were filed on the same day. Pl.'s Resp. at 5-7. Thus, at the time of filing here, it had no claim "pending" in another court. *Id.* The government disagrees, positing that where two comparable suits were filed on the same day, the complaint in this court should be treated as "pending" for purposes of Section 1500 when the case in the other court was filed, with the result that jurisdiction over the case in this court is ousted by operation of Section 1500. Def.'s Resp. at 10-11.

Grammatically, the words "has pending" in the statute constitute a present participle which "convey[s] the same meaning" as the present perfect tense and "indicates action that was started in the past and has recently been completed or is continuing up to the present time." William A. Sabin, *The Gregg Reference Manual*, §§ 1033-34, at 272-73 (10th ed. 2005). The Supreme Court's opinion in *Keene* is consistent with this grammatical understanding of the statutory usage because it refers to Section 1500 as interposing a jurisdictional bar to a "claim of a plaintiff who, *upon filing* [with the Court of Federal Claims], has an action pending in any other court" respecting the same claim. 508 U.S. at 209 (emphasis added). Thus, the natural plain meaning of the words used in Section 1500 calls for a determination of the order in which two or more suits were filed. If a suit were filed first in this court, Section 1500 would not apply.

2. *Prior precedents interpreting Section 1500.*

As the Tribe points out, this plain meaning of Section 1500 comports with prior precedent binding on this court. To counter the plain meaning and precedent, the government in its brief repeatedly cites and invokes the reasoning of the Federal Circuit's decision in *UNR Industries, Inc. v. United States*, 962 F.2d 1013 (Fed. Cir. 1992) (*en banc*), *aff'd sub nom. Keene Corp. v. United States*, 508 U.S. 200 (1993). *See* Def.'s Resp. at 4, 7-8, 15 n.9. In *UNR Industries*, the Federal Circuit undertook to streamline the application of Section 1500 and remove what it viewed as cumbersome and irrational "exceptions" to the statute. *See* 962 F.2d at 1021-23. One of those "exceptions" reflected the decision in *Tecon Eng'rs v. United States*, 170 Ct. Cl. 389 (1965). *See UNR Industries*, 962 F.2d at 1020. In *Tecon Engineers*, the Court of Claims traced the legislative history of Section 1500 back to the original Act of 1868. 170 Ct. Cl. at 399. The court concluded that Section 1500 retains the "same clear meaning and legislative intent" of the 1868 Statute, namely, "prevent[ing] this court from taking jurisdiction of a claim *only* when the same plaintiff *already* 'shall have commenced and has pending' another suit on the same claim in another court." *Id.* at 399 (second emphasis added). Thus, the court in *Tecon* concluded "that the only reasonable interpretation of [Section 1500] is that it serves to deprive this court of jurisdiction of any claim for or in respect to which plaintiff has pending in any other court any

suit against the United States, *only* when the suit shall have been commenced in the other court *before* the claim was filed in this court." *Id*. (emphasis added).

The government's argument premised on the Federal Circuit's *en banc* decision in *UNR Industries* is unavailing in pertinent respects, however, because the Supreme Court ultimately affirmed the *result* reached by, but not all of the reasoning of, the Federal Circuit in *UNR Industries*. *Keene*, 508 U.S. at 216-18. Notably, in deciding *Keene*, the Supreme Court found it "unnecessary to consider, much less repudiate, the 'judicially created exceptions' to § 1500 found in *Tecon Engineers*." *Keene*, 508 U.S. at 216. Among other things, the factual situation addressed by *Tecon Engineers* was not before the Federal Circuit in *UNR Industries*. The Supreme Court thus elided the Federal Circuit's overruling of *Tecon*.

In addition, the Supreme Court's rationale in *Keene* undercut any basis for treating the outcome of *Tecon Engineers* as an unwarranted judicially crafted exception to Section 1500. When evaluating whether Section 1500 should apply in a given case, the Supreme Court endorsed the application of "the longstanding principle that 'the jurisdiction of the Court depends upon the state of things *at the time of the action brought*,'" *Keene*, 508 U.S. at 207 (emphasis added) (quoting *Mullen v. Torrance*, 22 U.S. 537, 539 (1824) (Marshall, C.J.) and listing additional authorities). The Supreme Court thus recognized that the operation of Section 1500 and, consequently, the limits it places on this court's jurisdiction, depend upon whether another claim has *already* been filed in a different court *at the time* the complaint is filed in this court. *See id*.; *see also id.* at 208 & n.3 (describing Section 1500's "has pending" language as a "time-of-filing" requirement), and 217 n.12 (also referring to "the time-of-filing rule" applicable to Section 1500).

After *Keene* was decided, the Federal Circuit has accepted that Section 1500 incorporates a *time*-of-filing requirement. In light of the Supreme Court's discussion in *Keene*, the Federal Circuit acknowledged in *Loveladies Harbor* that its previous repudiation of *Tecon Engineers* in *UNR Industries* "was mere *dictum*, and therefore we will not accord it *stare decisis* effect." *Loveladies Harbor*, 27 F.3d at 1549 (italics in original). Thereafter, in *Hardwick Bros. Co. II v. United States*, 72 F.3d 883 (Fed. Cir. 1995), the Federal Circuit declared unequivocally that "*Tecon Engineers* remains good law and binding on this court." 72 F.3d at 886. Furthermore, more recent decisions by the Federal Circuit such as *Harbuck v. United States*, 378 F.3d 1324 (Fed. Cir. 2004), and *United States v. County of Cook*, 170 F.3d 1084 (Fed. Cir. 1999), embrace *Tecon*'s recognition of the importance of chronology of filing for purposes of Section 1500. *See Harbuck*, 378 F.3d at 1328 ("'The question of whether another claim is 'pending' for purposes of *§ 1500* is determined at the *time* at which the suit in the Court of Federal Claims is filed.'" (emphasis added) (quoting *Loveladies Harbor*, 27 F.3d at 1548)); *County of Cook*, 170 F.3d at 1090 ("[J]urisdiction in the Court of Federal Claims under [Section 1500] 'depends upon the state of things *at the time of the action brought.*'" (emphasis added) (quoting *Keene*, 508 U.S. at 207)).

Notwithstanding this line of precedent, the government relies on *Harbuck* and *County of Cook* for the proposition that the precise time of filing is irrelevant and that same-day filing should suffice to trigger a same-claim analysis, and ultimately bar jurisdiction, over Nez Perce's complaint in this case, under Section 1500. Def.'s Resp. at 5-6. This reliance is misplaced.

In both *Harbuck* and *County of Cook*, a plaintiff originally filed a complaint against the United States in a district court. *See Harbuck*, 378 F.3d at 1327, 1328 (discussing transfer of a portion of plaintiff's claim to the Court of Federal Claims and the appropriate treatment of the transferred portion under 28 U.S.C. § 1631, the transfer statute); *County of Cook*, 170 F.3d at 1087, 1090 (same).[4] In each case, the district court subsequently transferred some, but not all, of the claims from the original complaint to the Court of Federal Claims pursuant to 28 U.S.C. § 1631 because the original (district) court found that it lacked jurisdiction over some of the claims in the cases before it and those claims could have been brought originally in this court. *Harbuck*, 378 F.3d at 1327, 1328; *County of Cook*, 170 F.3d at 1087, 1090; *see* 28 U.S.C. § 1631.

The express terms of Section 1631 required that the Court of Federal Claims treat the transferred claims "as if [they] had been filed . . . *on the date* upon which [they were] actually filed in . . . the court from which [they were] transferred." 28 U.S.C. § 1631 (emphasis added). Manifestly, however, both the claims transferred by the district court and those not transferred were filed concurrently because they were part of the same complaint as filed originally in the district court. In referring to the "operation of § 1631," the Federal Circuit therefore interpreted Section 1631 as effectively directing that the transferred and non-transferred claims be treated as having been filed "simultaneously," *i.e.*, at the exact same *time*. *See County of Cook*, 170 F.3d at 1090, 1091 n.8 ("Section 1631 mandates that the transferred claims be treated as if they were filed in the transferee court at the *time* they were filed in the transferor court." (emphasis added)); *see also Breneman v. United States*, 57 Fed. Cl. 571, 577 (2003). Then, the Federal Circuit considered how claims filed at the exact same time "by operation of § 1631" should be treated for purposes of an analysis under Section 1500. *Harbuck*, 378 F.3d at 1328; *County of Cook*, 170 F.3d at 1090.[5]

---

[4]In pertinent part, 28 U.S.C. § 1631 provides that

> [w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed, and the action . . . *shall proceed as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed* in . . . the court from which it is transferred.

28 U.S.C. § 1631 (emphasis added).

[5]Based on its understanding of the apparent purposes of Section 1500, the Federal Circuit concluded that, where simultaneous filing of claims in this and another court arose "by operation of § 1631," the non-transferred claims would be deemed "pending" at the time the transferred

The facts attendant to the filing of the complaints in this case are materially dissimilar from the situations presented in *Harbuck* and *County of Cook*. Here, Nez Perce's complaints were not filed simultaneously "by operation of § 1631" but rather were separately carried to this court and to the district court by a delivery service. Pl.'s Resp. at 2. Although the filing of Nez Perce's complaints occurred on the same day, as a factual matter the sequence of filing should be determinable. Accordingly, as a matter of law, the court concludes that the precise timing of filing of complaints involving the same "claim" has jurisdictional significance for purpose of applying Section 1500, even where overlapping complaints are filed on the same day. This ruling comports with a plain reading of the "has pending" text of the statute, follows the Supreme Court's time-of-filing precepts to guide interpretation of Section 1500, *Keene*, 508 U.S. at 207-09, 217 n.12, and adheres to the principle of parsing jurisdictional statutes "with precision and fidelity to their express terms." *Boston Edison Co. v. United States*, 64 Fed. Cl. 167, 176 (2005) (citing *Stone v. Immigration and Naturalization Serv.*, 514 U.S. 386, 405 (1995) (jurisdictional statutes "must be construed with strict fidelity to their terms").[6]

Finally, the government raises the additional argument that practical considerations should guide this court's application of Section 1500 to bar same-day complaints filed in this court. *See* Def.'s Resp. at 15-17. The government observes that evidentiary hearings may be required to determine the sequence of same-day filings and contends that such fact-intensive inquiries should be avoided in the interest of judicial economy. However, such policy considerations have no persuasive force when they lead to a construction of a jurisdictional statute that contravenes or tends to contravene the statute's express terms. *See Harrison v. PPG*

---

claims were filed, and thus the transferred claims should be dismissed for lack of subject matter jurisdiction where they rested on the same operative facts and involved requests for overlapping relief. *Harbuck*, 378 F.3d at 1329-30; *County of Cook*, 170 F.3d at 1091-92.

[6]The court acknowledges that there is a split in decisions of judges of this court on the applicability of Section 1500 to complaints filed on the same day. Three prior decisions apply a time-of-filing analysis in such a situation. *See Ak-Chin Indian Cmty. v. United States*, 80 Fed. Cl. 305, 308 n.4 (2008) (rejecting the contention that "an action in another court should be deemed 'pending' if it was filed on the same day as a complaint in this court"); *Salt River Pima-Maricopa Cmty. v. United States*, No. 06-943L, 2008 WL 1883170, at *4-5 (Fed. Cl. Apr. 24, 2008) (same); *Breneman*, 57 Fed. Cl. at 574-77 (same). One recent decision treats complaints filed on the same date as having been filed simultaneously for purposes of Section 1500. *See Passamaquoddy Tribe v. United States*, 82 Fed. Cl. 256, 261-72 (2008) (holding that same-day filings are *per se* "pending" for purposes of Section 1500 and dismissing a complaint filed in this court on the same day as a corresponding complaint was filed in district court). For the reasons stated above, this court's ruling is consistent with those in *Ak-Chin*, *Salt River*, and *Breneman*, but it is at least in tension with that in *Passamaquoddy*. It is technically not contrary to *Passamaquoddy* because the court in that case rested dismissal also on the alternate ground that the plaintiff there had not established as an evidentiary matter that on the pertinent day the complaint in this court was filed before that in the district court. 82 Fed. Cl. at 272-80.

*Indus., Inc.*, 446 U.S. 578, 592-93 & n.10 (1980) (Where a policy consideration was raised in a case concerning the reach of a jurisdictional statute, the Supreme Court commented that "[t]his is an argument to be addressed to Congress, not to this Court."). The court is obliged faithfully to apply the statute as written, not as a litigant would rewrite it. This is so even if the terms of the statute require "extra" work by the parties and the court.[7]

Having in mind the resolution of the same-day filing issue, the court conducted an evidentiary hearing on August 5, 2008 to gather the necessary facts related to the time the complaints in this court and the district court were filed.

*B. Resolution of the Times Nez Perce's Complaints Were Filed*

Nez Perce's complaint was delivered to the clerk of this court before its correspondingly submitted complaint was delivered to the clerk of the district court. *Compare* Joint Status Report Attach. 1 at 1-4 (Federal Express delivery confirmation showing delivery of the complaint to the clerk's office of this court at 9:00 a.m. on December 28, 2006), *with* Pl.'s Resp. Attach. 3 at 4-7 (Federal Express confirmation showing delivery of the complaint to the clerk's office of the district court at 10:28 a.m.). Notably, the filing fee for Nez Perce's district court complaint was omitted from the original transmittal to the district court and was not delivered to that court until 2:00 p.m. on December 28, 2006. Baum Declaration ¶ 4; Tr. 85:2-7 (Baum). The Tribe avers that its Court of Federal Claims complaint was filed earlier than its district court complaint. *See* Pl.'s Resp. at 7. The government argues, however, that earlier *delivery* to this court does not equate with earlier *filing* in this court and that the Tribe has failed to establish its earlier filing in this court by a preponderance of the evidence. *See* Def.'s Resp. at 17-18 (challenging plaintiff's evidence as insufficient to meet the requisite burden of proof).

1. *Filing at the U.S. Court of Federal Claims.*

Delivery of a complaint to a clerk's office is not dispositive of the time a complaint is filed. The clerk's offices examine proffered submissions for compliance with the pertinent court rules before accepting materials for filing. The factual inquiry into when each complaint was filed has been eased in this instance by the fact that the complaint submitted initially for filing to the district court's clerk's office was not accompanied by the appropriate filing fee.

Ms. Lisa Reyes, the Chief Deputy Clerk for Operations of the Court of Federal Claims, testified at the evidentiary hearing about filing procedures in this court. Tr. 11:21-25 (Reyes). Ms. Reyes explained that delivery services, including Federal Express, carry packages to the

[7]In this respect, *Passamaquoddy* is at odds with *Harrison*. *Compare Harrison*, 446 U.S. at 592-93, *with Passamaquoddy*, 82 Fed. Cl. at 272.

public area of the clerk's office, where a member of the clerk's office's staff signs for the package and the package is taken to the individual designated as the office's intake person for that day. The intake person opens, briefly examines, and distributes the mail, Tr. 12:14-20 (Reyes), but that person does not conduct an analysis of the sufficiency of a filing. Tr. 14:5 (Reyes). Rather, he or she identifies the delivery as a complaint or other type of submission, and also identifies any type of accompanying fee. Tr. 14:5-11 (Reyes). Although the intake person records this information, he or she does not identify any type of filing deficiencies or signatures. "She is not looking . . . for procedural adequacies; she is looking . . . merely to see what type of document it is" before forwarding it to the cashier or person who processes those types of documents, and "that person would look at it for sufficiency of filing." Tr. 14:11-16 (Reyes).

Following the intake person's identification of the delivered document and any accompanying fees, the "complaint and the filing fee, the check or money order, would be given to our cashier for the day." Tr. 12:24-25 (Reyes). The cashier processes the payment and the complaint, uses the "random wheel" to assign a judge to the complaint, and gives the complaint the next available docket number. Tr. 13:1-6; 14:21-23 (Reyes). It is the cashier's responsibility to ensure that the court receives the correct amount of money and that the check is made out to the proper person at the court, "basically just making sure that all of the procedures are followed to make it a clean filing." Tr. 14:24 to 15:4 (Reyes). At that point, the complaint is given to the specific case administrator (also referred to as a case manager) who handles the caseload for the particular assigned judge. Tr. 13:4-11 (Reyes). The case administrator then enters the complaint on the court's computer system for docketing, distributes it to the assigned judge, and serves the complaint on the Department of Justice. Tr. 13:7-16 (Reyes).

Ms. Reyes testified that in her view, filing is complete upon the cashier's determination that the filing requirements are satisfied because at that point a complaint has been examined for sufficiency, assigned to a judge, and given a docket number. Tr. 23:9 to 24:16 (Reyes). As Ms. Reyes said:

> To me, filing is complete upon somebody identifying that the proper payment has been made, we have an original and seven copies, it's been signed by an attorney who is actually an attorney who is admitted to practice in our court, and that all of the other various rules and procedures that are necessary for filing a complaint have been checked, and it complies with those elements.

Tr. 23:19 to 24:1 (Reyes). The subsequent entry by the case manager on the court's computerized docketing system is only a consequential step to the filing taken after the case number and judge have been assigned. Tr. 24:6-16 (Reyes). Ms. Reyes verified that the subsequent notice of docketing on the court's computerized system reads: "The following transaction was received from K. Heidi Gudgell, entered on 12/28/2006 at 12:50 p.m., [EST], and filed on 12/28/2006." Tr. 19:19-21 (Reyes). Ms. Reyes estimated that the docketing information is usually entered within fifteen or twenty minutes of the case manager's

involvement with the complaint, if the case manger is not "at lunch or on the telephone or handling another project." Tr. 19:22 to 20:9 (Reyes).[8]

On December 26, 2006, the same person was acting both as cashier and as the assigned judge's case manager. Tr. 20:12-17 (Reyes). When asked how far in advance of docketing the complaint electronically, this person, acting in his capacity as cashier, would have deemed the complaint filed, Ms. Reyes concluded: "All I can deduce . . . is that it was filed prior to 12:50 [EST]." Tr. 25:2-7 (Reyes). She further "guess[ed]" that the Nez Perce complaint was filed "sometime between 9:30 and 11:30 or between 12:30 and 12:50," allowing a gap for the cashier's typical lunch break between 11:30 to 12:30. Tr. 28:1-10 (Reyes).

2. *Filing at the U.S. District Court for the District of Columbia.*

Ms. Maureen Higgins, a Deputy Clerk for the U.S. District Court for the District of Columbia, testified that that court's clerk's office also undertakes a review of a proffered complaint to see if it is sufficient for filing purposes. Tr. 38:1-2 (Higgins). Therefore, "filing" does not take place upon receipt but, rather, filing occurs after a proffered complaint has been examined for sufficiency. In particular, Ms. Higgins specified that the clerk's office does not file a case without the appropriate filing fee. Tr. 39:4-9 (Higgins) ("We don't file the case without the fee."). If a complaint is submitted without the requisite filing fee or with another defect, the court calls parties to "tell them what the deficiencies are that stopped it and that they have X amount of time . . . to get it perfected so that it can be filed." Tr. 39:15-18 (Higgins); *see also* Tr. 56:4-8 (Higgins). In those circumstances, the complaint is "set aside until the person comes in to [make] the corrections they need to do." Tr. 56:13-15 (Higgins). Only after the corrections have been accomplished does the clerk's staff "get it filed," a process during which the person handling the matter would "work up the cover sheet and get the summonses signed and sealed and get ready to go to the computer, . . . and to sign it." Tr. 56:19 to 57:2 (Higgins). The case is considered filed "once it gets a case number and a judge." Tr. 57:3 to 57:6 (Higgins).

The Nez Perce complaint submitted for filing in the district court was not accompanied by the necessary filing fee. Donald Wharton, a lawyer for the Native American Rights Fund in Boulder, Colorado, testified that he caused the complaint to be prepared for filing in the district court and supervised the use of Federal Express to deliver the complaint for filing. Tr. 59:18 to 60:25 (Wharton). After Federal Express had picked up the package containing the complaint, Mr. Wharton realized that the filing fee had been omitted from the package because he saw the

[8]By Ms. Reyes's estimate, on a "normal day," "probably a couple of hours, maybe an hour and a half, two hours" passes from the time the intake person initially receives the complaint to the time the case manager dockets it electronically. Tr. 18:10-15 (Reyes). Although Ms. Reyes did not remember the delivery or processing of the Nez Perce complaint in particular, she recalled that the period after Christmas during the close of 2006 was "very hectic" because the court received many more complaints than usual at that time. Tr. 16:12-24 (Reyes).

check for the fee sitting on his desk. Tr. 63:5-15 (Wharton). At that point he took steps to ask for help from NARF's office in Washington, D.C. to help with providing the fee. Tr. 63:16-19 (Wharton). Dawn Sturdevant Baum of NARF's office in Washington, D.C. testified that at around 1:30 p.m. on December 28, 2006, she received a phone call and e-mail from NARF's Boulder office alerting her to the omission. Tr. 75:13-20 (Baum). In the interest of time, Ms. Baum prepared a personal check, Tr. 76:12-25 (Baum), and delivered that check by hand to the clerk's office of the court "around 2 p.m. or shortly before, approximately 2 p.m. [EST]" on December 28, 2006. Tr. 73:4-10 (Baum).

Accepting Ms. Baum's testimony, as this court does, the perfected complaint was necessarily filed in the district court after 2:00 p.m. on December 28, 2006. Thus, the complaint in district court was filed after the complaint in this court, which occurred before 12:50 p.m. that day.

In all the circumstances, the court is satisfied that the complaint in this court was filed before the corresponding complaint was filed in district court. Section 1500 accordingly is not applicable to bar jurisdiction over Nez Perce's complaint in this court because the complaint in district court was not pending at the time the complaint in this court was filed.

## CONCLUSION

For the reasons stated, the court holds that when a complaint is filed in the Court of Federal Claims prior to the filing of an overlapping complaint in another court on the same day, 28 U.S.C. § 1500 does not divest this court of jurisdiction over that first-filed complaint. The Nez Perce Tribe has proved by a preponderance of the evidence that its Court of Federal Claims complaint was filed on December 28, 2006, earlier than its complaint filed the same day in district court. In sum, Nez Perce's complaint in the district court was not "pending" when the Tribe filed its complaint in this court. Because the Tucker Act and Indian Tucker Act provide a basis for jurisdiction over Nez Perce's complaint in this court, and because that jurisdiction is not displaced by operation of 28 U.S.C. § 1500, the court is obliged to proceed to consider the merits of this case.

The government shall file its answer to Nez Perce's complaint on or before September 26, 2008.

IT IS SO **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge